JOSEPH HOUSEMAN ET AL. v. THE MERCHANTS' DISPATCH TRANSPORTATION COMPANY.

*Carriers—Delay in transporting goods—Damages—Market value —Findings of fact.*

1. In an action against a common carrier to recover damages alleged to have been sustained by reason of delay in transporting a case of goods from the place of purchase to the place of destination, the measure of damages in case of recovery is the difference between the market value of the goods at the time when and the place where, by the contract, they were to be delivered, and such value at that place at the time of their actual delivery.

2. Two of the plaintiffs, whose evidence was not contradicted, and who alone testified on that branch of the case, testified that the goods depreciated in value a given per cent. between the time when they should have arrived and the time of their arrival. On cross-examination one of the witnesses admitted that the plaintiffs had never offered to sell the goods; that he could not say what they would have sold for; that the goods might, immediately upon their arrival, have been sold for cost, at a detriment to other goods upon which plaintiffs were making a good profit; that possibly the goods could not have been purchased at a less price at the time they were received than that agreed to be paid for them; and that he based his judgment as to the depreciation in the value of the goods upon what they were worth to the plaintiffs. The testimony of the other witness also failed to show any depreciation in the market value of the goods. The court found that there had

been no such depreciation, and rendered a judgment for the defendant. And it is held that there was some evidence to support the finding, and that the conclusion of law properly followed.

Error to Kent. (Grove, J.) Submitted on briefs February 14, 1895. Decided March 5, 1895.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Maurice M. Houseman,* for appellants.

*L. G. Rutherford,* for defendant.

LONG, J. This action is brought to recover damages growing out of a delay in transporting a case of merchandise from New York to Grand Rapids, this State. The cause was tried before the court without a jury, and the following findings made:

"1. The plaintiffs are retail clothing dealers in the city of Grand Rapids.

"2. On November 8, 1893, they made the following order:

" 'NEWBORG, ROSENBURG & CO.,
" '200 Greene St.,
" 'New York, N. Y.:
" 'Ship 25 each two light shades Washington beaver overcoats.
" 'HOUSEMAN, DONNALLY & JONES.'

"3. The plaintiffs gave no special instructions to any one as to the manner or by what line the goods in question should be shipped, but the plaintiffs had previously given definite instructions to Newborg, Rosenburg & Co., the party from whom the goods in question in this suit were purchased, at the city of New York, to ship all goods ordered from said Newborg, Rosenburg & Co. *via* the Merchants' Dispatch Transportation Co.

"4. On November 9, 1893, Newborg, Rosenburg & Co. delivered the goods to the defendant, and with them the bill of lading, which contained the following conditions:

" 'No carrier is bound to carry said property by any particular

train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit.'

"This bill of lading was forwarded by the shippers to plaintiffs.

"5. The goods were delayed in transit, and did not arrive at Grand Rapids until the 28th of November. Upon their arrival, the defendant caused the goods to be delivered at the plaintiffs' place of business, who refused to receive them."

"7. On the 3d of January, 1894, the defendant again notified plaintiffs that it desired them to receive the goods. On January 4 the plaintiffs again refused to receive them. On January 10 defendant again requested plaintiffs to receive the goods, and was again refused. On January 17 the defendant again requested plaintiffs to receive the goods. They refused to do so, and on the following day commenced this action by summons.

"8. I further find that the plaintiffs ordered these goods for the purpose of offering them at a special sale; but I also find that neither the defendant, nor the parties in New York from whom the goods were ordered, was notified that the goods were purchased for any other purpose than to sell at retail in the ordinary course of trade, and that the defendant never knew that the goods had been purchased for any special purpose until after their arrival in Grand Rapids and refusal by the plaintiffs; yet, if they had been delivered within six days from date of shipment, they would have been in time for said special sale.

"9. The cause of the delay of the receipt of the goods is not explained by any evidence in the case.

"10. On the 15th day of April, 1894, almost three months after this suit was commenced, the plaintiffs went to the Detroit, Lansing & Northern Railway freight house, and took the goods into their possession, where they were at the time this action was tried. The cost price of the goods was $250.

"11. I further find that there was no change in the market value of the goods between the 9th day of November, 1893, the date of shipment, and the 28th day of November, 1893, the date of their arrival.

"12. I further find that, in soliciting the business of plaintiffs, defendant's agent had promised to deliver all goods shipped *via* its line, the Merchants' Dispatch Transportation Company, in from four to six days from the city

of New York to the city of Grand Rapids, and in pursuance of said promises the plaintiffs had often shipped goods by defendant's line, and the said defendant had, for a long period of time and on many particular occasions, delivered such goods so ordered in from four to six days from the city of New York to the city of Grand Rapids.

"13. The goods in question were offered by the said defendant to the said plaintiffs 19 or 20 days after the same had been delivered by the said Newborg, Rosenburg & Co. to the said defendant at the city of New York."

"I find from the foregoing facts that the plaintiffs are not entitled to recover in this action, and that a judgment of no cause of action should be given, and that the defendant recover its costs to be taxed."

Exception is taken to these findings of fact and the conclusion of law. It is contended:

1. That there is no evidence to support the eleventh finding of fact, but that the evidence supports the proposed amendment to such finding, as follows:

"That there was a change in the market value of the goods ordered by plaintiffs from Newborg, Rosenburg & Co. between the 9th of November, 1893, the date of shipment, and the value of said goods on the day on which they were tendered to the plaintiffs, to wit, November 28, 1893, of at least 40 per cent. in the value of said goods."

2. That the proposed sixteenth finding of fact should have been allowed, as follows:

"The only testimony in the case as to the market value of the goods in question at any time was the testimony of Eugene W. Jones and Edward H. Donnally, two of the plaintiffs. Their testimony was that the goods had depreciated from 40 to 50 per cent. between the time they should have arrived and the time they did arrive, in the market of their arrival; and their testimony was uncontradicted."

3. That the court erred in its conclusion of law, and in refusing to find, as requested, that plaintiffs recover as their damages the sum of $150, with their costs to be taxed.

While it is true that there was testimony that a change had taken place in the market value of the goods, and

that Jones and Donnally were the only witnesses to that fact, yet we must take all their testimony to determine whether the court should have found as requested. On cross-examination Mr. Jones testified:

"*Q.* Have you ever put these goods on the market?
"*A.* No, sir.
"*Q.* What can they be sold for on this market?
"*A.* That I could not say. We have not offered them for sale; they may have sold and they may not.
"*Q.* Don't you think that if, immediately upon the receipt of these goods, you had put them on the market, you could have got the cost out of them readily enough?
"*A.* Well, there comes a question of business, possibly, that don't enter into direct testimony and a lawsuit. We might have disposed of these goods at a detriment to other goods that we were making a good profit on; but we were not doing business to sell Merchants' Dispatch Company's goods or anybody's else goods for cost."

Mr. Jones further stated that possibly the goods could not have been purchased at a less price at the time they received them than the price agreed to be paid, and that what he based his judgment of depreciation upon was what the goods were worth to his firm. Mr. Donnally's testimony also fails to disclose any depreciation in the market value of the goods on the day they were delivered from the day they were purchased.

We think the evidence fully sustained the finding of the court. It is evident that the plaintiffs regarded the value of the goods at what they were worth to the firm, and not the market value. That the market value had not depreciated is admitted by Mr. Jones. The measure of damages in the case would be the difference between the market value at the time when and the place where, by the contract, they were to be delivered, and such value at that place at the time they were actually delivered. 3 Suth. Dam. p. 219. There was some evidence to support

the findings of the court ·below, and the conclusion ·of law properly followed.

We find no error, and the judgment must be affirmed. The other Justices concurred.